UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EILENE A. SHIMI,

          Plaintiff,

v.                                                 Case No. 20-CV-1702

ASSOCIATED FINANCIAL GROUP, LLC,

          Defendant.

## DECISION AND ORDER

### 1. Facts and Procedural Background

Eilene A. Shimi worked for Associated Financial Group, LLC (and its predecessors) from 1995 until Associated terminated her employment on April 27, 2018. (ECF No. 31, ¶¶ 3, 11.[1]) Shimi alleges she was terminated because of her age in violation

---

[1] Associated submitted a reply in support of its proposed findings of fact. (ECF No. 37.) It states that its reply is made pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rules 7.1 and 56.2. None of those Rules permit such a reply. Civil Local Rule 7.1 relates to a party's disclosure statement and the court has not had a Civil Local Rule 56.2 since 2010. A movant is permitted to reply only to *additional* proposed findings of fact submitted in response to a motion. *See* Civ. L.R. 56(b)(3)(B). Accordingly, Associated's reply (ECF No. 37) may be stricken. *See Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2021 U.S. Dist. LEXIS 64654, at *7 (E.D. Wis. Apr. 1, 2021). Insofar as Shimi attempted to introduce her own proposed findings of fact by responding to Associated's proposed facts, this, too, is inappropriate. *See* Civ. L.R. 56(b)(2)(B)(ii); *Lanning v. Gateway Tech. Coll.*, No. 19-CV-890, 2020 U.S. Dist. LEXIS 121446, at *1 n.1 (E.D. Wis. July 10, 2020). However, in light of Shimi's pro se status and the fact that, by virtue of its improper reply, Associated did address these additional assertions, the court will overlook these irregularities with respect to Shimi's additional factual assertions, provided they are relevant and

of the Age Discrimination in Employment Act of 1967 (ADEA). Associated says it ended her employment because of her history of performance problems.

Shimi provided claims administrator services for customers of Associated. (ECF No. 31, ¶ 4.) From 2013 through 2016, her annual reviews stated, "Solid Performance." (ECF No. 31, ¶ 17.) But in 2017, problems arose.

Associated promoted Shannon Kuznia to Claims Manager in July of 2017 and shortly thereafter she became Shimi's supervisor. (ECF No. 31, ¶ 9.)

In a September 6, 2017 meeting with Account Executive Robert Kotecki, Shimi lost her temper, slammed her hand on her desk and said, "I am so fucking sick of this." (ECF No. 31, ¶ 25.) On September 12, 2017, one of Associated's customers called and asked that Shimi and Kotecki be removed from working on its account. (ECF No. 31, ¶ 21.) On September 19, 2017, Shimi failed to participate in a telephonic meeting she scheduled with a customer because she was still in an earlier meeting for which she had not allotted sufficient time. (ECF No. 31, ¶¶ 31, 33.) When the customer called Kotecki about the meeting, he was forced to reschedule the meeting because of Shimi's absence. (ECF No. 31, ¶¶ 31-32.) These incidents led to a "Verbal Discussion Document" between Shimi and her supervisor, Kuznia. (ECF No. 31, ¶ 34.)

---

supported by an appropriate citation to the record. Factual assertions that are not supported by an appropriate citation to the record are disregarded. *See* Civ. L.R. 56(b)(2)(B)(i).

In late-2017 Shimi's supervisors, Kuznia and Steve Orme, learned that an Account Executive, Phil Procter,[2] had asked Shimi in July to review the claims of one of his customers and for her to set up a meeting in August or September. (ECF No. 31, ¶ 35.) Procter reported to Shimi's supervisors that she did not respond until September 26, 2017. (ECF No. 31, ¶ 35.)

In January of 2018 Kotecki asked Shimi to assist a customer with two claims. (ECF No. 31, ¶ 37.) Shimi stated that the customer did not generate enough revenue for Associated to merit her involvement and suggested that the client watch some videos. (ECF No. 31, ¶ 37.) This led Kotecki to complain to his supervisor about Shimi's response and to assert that this lack of customer service would result in them losing customers. (ECF No. 31, ¶ 38.) Kotecki's supervisor contacted Kuznia, who told Shimi that she should have assisted the customer in the interest of providing good customer service. (ECF No. 31, ¶¶ 39-40.)

Around this same time Kuznia learned that Account Executive Joseph Schreiner did not want to include Shimi in a meeting with a customer because of a number of problems he had with her in prior meetings. (ECF No. 31, ¶ ¶ 41-42.) Specifically, he reported to Kuznia that in a meeting with a new client Shimi had "rambled for 30 minutes" when attempting to answer a client's question and undermined Schreiner by stating he was new and suggesting he was not knowledgeable. (ECF No. 31, ¶ 42.)

---

[2] Associated refers to him "Proctor" (*see, e.g.*, ECF Nos. 24 at 11; 25, ¶ 35), whereas Shimi refers to him as "Procter" (*see, e.g.*, ECF No. 32 at 7). "Procter" appears to be the correct spelling. (*See* ECF No. 33-1 at 24.)

Schreiner also reported that, in meetings with the customer that had previously requested that Shimi be removed from its account, Shimi was unprepared and rambled to the point that it was clear she did not know what she was talking about. (ECF No. 31, ¶ 44.) He also reported that Shimi was rarely in the office. (ECF No. 31, ¶ 45.)

Another Account Executive, Miranda Childers, asked Orme to assign someone other than Shimi to work with her on a team for a customer. (ECF No. 31, ¶ 47.) Childers reported that Shimi tended to act unprofessionally in front of clients, failed to stay on task, did not meet deadlines, and inappropriately sent a message to a large group, including the customer, to discuss a private issue with her colleagues. (ECF No. 31, ¶ 47.)

Based on these concerns Kuznia worked with Human Resources to create a Corrective Action Notice for Shimi. (ECF No. 31, ¶ 49.) That notice, which outlined the problems in Shimi's performance and objectives for improvement, was presented to Shimi on February 22, 2018. (ECF No. 31, ¶ 52.) Kuzina also instructed Shimi that she was to work exclusively in the office. (ECF No. 31, ¶ 53.)

When Kuznia completed Shimi's 2017 performance review, she solicited feedback from Childers, Kotecki, and Scott Swenson, another Account Executive. (ECF No. 31, ¶ 57.) Childers reported that Shimi was knowledgeable and friendly with customers but described her emails and dialogue as appearing unplanned and unorganized. (ECF No. 31, ¶ 58.) Swenson reported that Shimi had deficits in organization, meeting deadlines,

keeping him informed, accepting responsibility for assignments, and being receptive to new ideas or approaches. (ECF No. 31, ¶ 59.) Kotecki reported that Shimi had deficits in developing and maintaining strong customer relationships and encouraging teamwork. (ECF No. 31, ¶ 60.) Overall, Kuznia assigned Shimi a performance rating of "Improvement Opportunity," which meant, "Inconsistently meets the expectations of the job responsibilities and goals; delivers mixed results that do not consistently meet performance expectations." (ECF No. 31, ¶ 61.)

On April 16, 2018, another customer requested that Associated remove Shimi from handling its account. (ECF No. 31, ¶ 64.) Based on that latest request, Orme and Kuznia met with Human Resources and decided to end Shimi's employment. (ECF No. 31, ¶ 66.)

Shimi filed a discrimination complaint against Associated with the Wisconsin Department of Workforce Development's Equal Rights Division and the Equal Employment Opportunity Commission on December 18, 2018. (ECF No. 31, ¶ 1.) She filed the present action on November 12, 2020, alleging that Associated discriminated against her in violation of the Age Discrimination in Employment Act (ADEA) when it failed to promote her to the position that Kuznia obtained and later terminated her employment. (ECF No. 1.)

On April 1, 2022, Associated moved for summary judgment. (ECF No. 23.) Shimi responded (ECF No. 32), and Associated replied (ECF No. 35). The motion is ready for

resolution. All parties have consented to the full jurisdiction of this court. (ECF Nos. 2, 8.) The court has subject matter jurisdiction pursuant to 28 U.S.C. 1331.

**2. Applicable Law**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

"The ADEA protects workers who are at least 40 years of age from age-based employment discrimination …." *Sinha v. Bradley Univ.*, 995 F.3d 568, 573 (7th Cir. 2021); 29 U.S.C. §§ 631(a), 623(a). "A plaintiff suing under the ADEA 'must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'" *Sinha*, 995 F.3d at 573 (quoting *Gross v. FBL Fin. Servs.*,

*Inc.*, 557 U.S. 167, 180 (2009)). Although courts have articulated various ways parties may present a claim of age discrimination, "[a]t the end of the day, the question is simply whether the same events would have transpired if [Shimi] had been younger than 40 and everything else had been the same." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 725 (7th Cir. 2018) (internal quotation marks omitted). Shimi may carry this burden by presenting direct or circumstantial evidence or through the familiar *McDonnell Douglas* burden-shifting framework. *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018).

3. Analysis

Shimi attempts to present circumstantial evidence that, but for her age, Associated would not have fired her. Shimi also alleges that Associated discriminated against her when it did not promote her. The alleged failure-to-promote occurred on July 1, 2017, when Associated promoted 34-year-old Kuznia to the position of Claims Manager. (ECF No. 31, ¶¶ 9, 14.) Shimi did not file her discrimination complaint until December 18, 2018 (ECF No. 31, ¶ 1), more than 300 days after the alleged violation. Consequently, any claim based on an alleged failure to promote is untimely. *See* 29 U.S.C. § 626(d)(1)(B). However, while it cannot serve as an independent compensable claim, insofar as it might be a prior instance of discriminatory conduct that suggests that decisionmakers were hostile to persons of Shimi's age, it may be relevant in proving that Shimi's eventual termination was the result of her age.

Because this matter is before the court on the defendant's motion for summary judgment, the court views the facts in the light most favorable to the plaintiff. Shimi argues that Associated "utilized a suspect disciplinary process, together with misrepresentations and failed record keeping to camouflage discriminatory intent." (ECF No. 32 at 3.) Thus, the court looks closely at her arguments and assertions.

Shimi addresses each alleged performance issue "[t]o demonstrate the inconsistencies in the position of [Associated]." (ECF No. 32 at 7.) She asserts that Procter's statement that she did nothing regarding his request until September 26, 2017, "is patently false." (ECF No. 32 at 7.) As for the customer that allegedly asked that she be removed from its account on September 12, 2017, Shimi argues that no concerns were expressed during her meetings with that customer, and the customer representative who later made the request that Shimi be removed had not participated in the meetings. (ECF No. 32 at 8.) She also notes that, although the request that Shimi be removed from working with this customer was reportedly confirmed by email, Associated has not provided her with any such email. (ECF No. 32 at 8.)

Regarding the missed meeting on September 19, 2017, Shimi complains that a co-worker, who was also supposed to participate in the meeting, was not disciplined. (ECF No. 32 at 9.) Shimi does not state the age of the co-worker, but the defendant's submissions indicate the co-worker was 61 years old. (ECF No. 31, ¶ 30.)

She disputes the statement on the Verbal Discussion Document that there had been "ongoing coaching conversations" with her prior to September 26, 2017. (ECF No. 32 at 10.) She complains that Associated did not follow the "action steps" in the document because it, for example, failed to have one-on-one conversations with her. (ECF No. 32 at 10.)

She also disputes that she was ever removed from another customer's account. (ECF No. 32 at 10.) She questions Kuznia's decision to solicit feedback from Childers and Swenson because she had worked with them on only one account. (ECF No. 32 at 11.) She insists she did nothing wrong by suggesting that a customer watch videos instead of her directly assisting with the claim; this was consistent with Associated's policies regarding small-revenue customers. (ECF No. 32 at 11-12.) She appears to question the veracity of Schreiner's alleged complaints because he had contacted her after her termination, expressed his surprise at her termination, and assisted her in interviewing for a position with his new agency. (ECF No. 32 at 12-13.)

Shimi notes that the Corrective Action Notice did not include the names of the accounts for which Associated had received complaints about her. (ECF No. 32 at 13.) She notes that, when she requested her personnel file, it was mailed from Green Bay, whereas her prior request for the file had been mailed from Stevens Point, and the file did not include Shimi's response to the Corrective Action Notice. (ECF No. 32 at 14.) Nor did the file include any complaints or her 2017 performance evaluation. (ECF No.

32 at 14.) Shimi asserts that her 2017 performance evaluation "was not completed at one time." (ECF No. 32 at 14.)

She contends that in March 2018 she found that her "Paid Time Off days" were already entered, which she argues suggests "that management was checking to see how much accrued Paid Time Off I had accumulated in the event of termination." (ECF No. 32 at 15.)

As for the customer who on April 16, 2018, requested that she not work on its account, she states that the customer had not raised any concerns with her during or after the meeting. (ECF No. 32 at 16.) She notes that the email the customer sent does not specifically refer to her or the meeting she had with the customer. (ECF No. 32 at 16.)

She notes that in prior discipline her conduct was frequently characterized as "unprofessional," but this word was not used in her termination. (ECF No. 32 at 16-17.) She also notes that the termination document refers to a complaint on April 10, 2018, but other records indicate the complaint was received on April 16, 2018. (ECF No. 32 at 17.)

Accepting all of Shimi's assertions as true and viewing them in the light most favorable to her, at best they demonstrate that Associated acted unfairly in deciding to fire her. However, there is no federal cause of action for unfair termination. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) ("Federal courts have authority to

correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair."). It is immaterial that Shimi believed she was adequately performing her job. *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). A court does not "sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation." *Ptasznik*, 464 F.3d at 697 (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005)).

Shimi's theory is, in effect, that because her termination was unfair, Associated must have terminated her because of her age. An unfair termination, however, is insufficient to sustain a claim for age discrimination. Shimi offers essentially nothing to connect her termination to her age. All she points to is the fact that the person who received the promotion she wanted and the person who was hired to replace her were younger than 40 years old. She overlooks all the others at Associated who were her contemporaries, including Orme, who was 58 when he fired Shimi (ECF No. 31, ¶ 15), Kotecki, who was 50 (ECF No. 31, ¶ 24), and the 61-year-old co-worker Shimi complains was not similarly disciplined when he missed a meeting (ECF No. 31, ¶ 30).

No reasonable finder of fact considering the evidence that Shimi presents could concluded that her age was a factor, much less a dispositive factor, in Associated's decision to terminate her employment. In other words, Shimi has failed to present evidence from which a reasonable finder of fact could conclude that she would not have

been fired but for her age. Consequently, the court must grant Associated's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Associated Financial Group, LLC's motion for summary judgment (ECF No. 23) is **granted**. Eilene A. Shimi's complaint and this action are dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of May, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment (60 days if one of the parties is, for example, the United States, a United States agency, or a United States officer or employee sued in an official capacity). See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot

extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.